CUMBERLAND GLASS MANUFACTURING COMPANY *vs.* FREDERICK E. ATTEAUX.

Suffolk.    March 24, 1908. — June 18, 1908.

Present : KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Evidence,* Best and secondary. *Witness,* Contradiction.

In an action upon a contract guaranteeing sales made by the plaintiff to a certain corporation, of which at the time the guaranty was executed the defendant owned substantially all the stock, the defendant testified that before the sales to the plaintiff were made he had withdrawn from the corporation, had transferred all his shares to a person who was the treasurer of the corporation, and in an interview with the plaintiff had informed him of his withdrawal and had notified the plaintiff that he no longer would guarantee the debts of the corporation, to which the plaintiff had assented, saying that a formal notice revoking the defendant's guaranty would be unnecessary. All of this was denied by the plaintiff, who testified that he never had received any notice of a revocation of the guaranty or of the defendant's disposing of his interest in the corporation. The plaintiff called as a witness the person to whom the

defendant testified that he transferred his shares in the corporation, and who was its treasurer. This witness testified that all the books of the corporation had been lost or destroyed and could not be produced. He also testified that he could not remember how many shares of stock the defendant had, nor how many he himself had, nor what other persons held stock, nor whether or not the defendant had transferred his shares. The corporation was organized in another State. The plaintiff offered in evidence a certificate of the secretary of state of that State certifying to a copy of a record of a return, purporting to be made by the witness as treasurer of the corporation. The return purporting to be signed by the witness was dated one year after the time when the defendant had testified that he had transferred all his shares to the witness, and contained a list of the stockholders, in which the defendant was put down as the holder of a large number of shares. The witness was shown the certificate and was asked whether he made the return of which the certificate purported to be a copy. He answered that he did not remember, but that he was required to make such a return once a year, and that if he made that return he thought it was correct. Subject to the exception of the defendant the judge admitted the certificate in evidence for the purpose of showing that the witness "made such a report, and for no other purpose." *Held*, that the plaintiff was entitled to show that one year after the time when the defendant testified that he had transferred his shares they still stood in his own name, that, in view of the loss of the books of the corporation and the inability to produce them and of the want of recollection of the treasurer as to who were the stockholders or whether the defendant had transferred his shares, a copy of the record of a return purporting to be signed by a person bearing his name and occupying the office which it was shown that he occupied was admissible as some evidence to show that the witness was the same person who filed the return, and that this evidence, taken in connection with the testimony of the witness that if he made the return it was correct, had a tendency to show the truth of the statements contained in it; *also*, that this evidence did not contradict the testimony of the witness called by the plaintiff, as it was not inconsistent with his statement that he did not remember; *also*, that the matter on which the statements in the return tended to contradict the defendant was not an immaterial one, as the truth of the defendant's statements as to his ownership of the stock had a material bearing upon the probability of the ground of defense set up by him.

CONTRACT for $942.86, with interest from January 1, 1900, with a count on an account annexed and a special count on a contract of guaranty which is printed below. Writ dated July 6, 1900.

The contract declared upon was as follows:

"Boston, Aug. 3, 1894.
"Cumberland Glass Mfg. Co.
Bridgeton N. J.
"Dear Sirs:
"In the future, please bill all goods ordered of you to the Grocers Specialty Co. instead of F. E. Atteaux & Co. Kindly note that the address is changed to 26 India Square. We notice

that you shipped these to 37 India Wharf, Boston.   Our concern is not and never has been located at that address.   We were formerly at 37–8 India Street.   All bills will be guaranteed as usual.

" Yours truly,

" F. E. Atteaux & Co.

Grocers Specialty Co.

F. E. Atteaux, Treasurer."

In the Superior Court the  case was tried before *Pierce*, J. The plaintiff introduced in evidence an auditor's report, finding in its favor for the amount claimed in the declaration, and rested.   The defendant introduced evidence tending to show that at the time he wrote the letter of August 3, 1894, he owned substantially all of the stock of the Grocers Specialty Company, and was actively interested in its business ; that in January of 1898 he had arranged with one Ward for the sale of his interest in the Grocers Specialty Company ; that in the same month the president of the plaintiff called upon the defendant at his office in Boston and the defendant then informed him that he contemplated disposing of his interest in the business and that after the end of the current month he would not be responsible upon his guaranty for the debts of the Grocers Specialty Company, as Ward had taken over the business, and asked the president of the plaintiff whether a formal letter revoking his guaranty would be necessary, and that the president replied that such a letter would not be necessary.

Ward had been doing business in South Boston under the name of the Eagle Extract Company.   The office of the Grocers Specialty Company was at 26 India Square, Boston, and remained there until July, 1898, when the lease of those premises expired.   The defendant also introduced evidence tending to show that the plaintiff had sold goods to Ward under the name of the Eagle Extract Company for about twenty years.

A large number of the items of the plaintiff's declaration were originally charged to the Eagle Extract Company, and there was evidence that those charges were transferred to the Grocers Specialty Company.   The plaintiff offered evidence tending to show that these items were so charged to the Eagle Extract

Company erroneously and that the goods were sold and delivered to the Grocers Specialty Company, and that evidence upon that subject was introduced before the auditor.

Upon behalf of the plaintiff, the president of the plaintiff denied that he ever had the interview with the defendant in January, 1898, as the defendant had testified, and denied that the defendant ever informed him that the defendant contemplated disposing of his interest in the Grocers Specialty Company, and denied that the defendant notified him in any way that he would not be longer responsible for the debts of the Grocers Specialty Company to the plaintiff.

Upon cross-examination, the defendant testified that he owned most of the stock of the Grocers Specialty Company until January, 1898, and was treasurer of that company; that some time in 1898 the business of the Eagle Extract Company, of which Ward was proprietor, was consolidated with that of the Grocers Specialty Company, in this manner: The value of the assets of each concern was ascertained, and shares of stock in the Grocers Specialty Company were given to Ward and to the defendant in proportion to the value of the assets contributed by them, respectively; that he did not remember the number of shares which he, the defendant, had, but he thought they were about forty, and that Ward had the balance, with the exception of one share to one Stewart, a nephew of the defendant, and one share to one Blanchard, to qualify them each to be directors; and that thereafter the business was carried on by the consolidated corporation.

The defendant also testified on cross-examination that subsequently to the consolidation he turned over all of his shares of stock to Ward in the latter part of 1898; that thereupon he tendered in writing his resignation of the office of director, and that thenceforth he had no connection with the corporation, the Grocers Specialty Company.

The plaintiff contended that the defendant did not turn over his shares to Ward and did not resign the office of director.   In support of this contention the plaintiff endeavored to show the record of the holdings of stock in the Grocers Specialty Company and of the transfers thereof; and in that behalf the plaintiff's counsel had given due notice to the defendant to produce

in court at the trial the stock book and all other books of that corporation; but the defendant failed to produce the books or any of them and testified that they had never been in his possession, and that he did not know where they were.

The defendant was asked upon cross-examination if he could fix the date of his alleged transfer of the shares to Ward or any consideration that he received from Ward for the sale thereof by referring to his own account books; and he replied that his books had been destroyed. He testified that at the time of the transactions in question he was doing a business of from a million and a half to two million dollars annually.

It appeared that on March 23, 1900, the Grocers Specialty Company had made a voluntary assignment to one McGuire of all its assets for the benefit of its creditors. A summons had been issued to McGuire to produce the books of the Grocers Specialty Company in court, and McGuire testified that he had never had them and did not know where they were. A like summons had been issued to Ward, the treasurer of that corporation, to produce the books of that corporation, but he failed to do so, and testified that after search he could not find them, and that many of the books of the corporation had been destroyed, that he did not know where the stock book was nor whether it had been destroyed. He also testified that he could not remember how many shares of stock the defendant had, nor how many he himself had, nor what other persons held stock, nor whether or not the defendant had transferred his shares.

The plaintiff offered evidence, which was admitted without objection, that on April 27, 1899, the defendant as a director of the Grocers Specialty Company signed and made oath to a certificate of the condition of that corporation, which was filed in the office of the secretary of state of this Commonwealth.

Ward was shown the certificate printed below, and was asked whether he made to the secretary of state of Maine the return of which the certificate purported to be a copy, to which he replied that he did not remember, but that he was required to make such a return once a year and that if he made that return he thought it was correct.

The plaintiff offered in evidence the following certificate:

" State of Maine.

" Office of Secretary of State.

" I hereby certify that the paper to which this is attached is a true copy from the records of this office.

" I further certify that I am the legal custodian of said record ; that I am the proper officer to attest the said copy of the same ; that this attestation is in due form ; that I am the keeper of the great seal of the State.

" In testimony whereof I have caused the seal of the State to be hereunto affixed.

" Given under my hand at Augusta, this twenty-first day of May, in the year of our Lord one thousand nine hundred and seven and in the one hundred and thirty-first year of the independence of the United States of America.

" A. I. Brown,

Secretary of State."

[Seal of State.]

[Attached :]

" State of Maine.

· " November 1st, 1899.

" To Hon. Byron Boyd,

Secretary of State :

" In compliance with the Statutes of the State of Maine, the treasurer of the Grocers Specialty Company makes the following return of the names of all the stockholders of said corporations, their residence, the amount of stock owned by each, and the whole amount paid in on the first day of November, A. D. 1899 :

| Names of Stockholders. | Residence. | Amount of Stock owned by each. |
|---|---|---|
| E. C. Ward, | Boston, Mass. | 115 shares. |
| F. E. Atteaux, | "    " | 46 " |
| John H. Blanchard, | "    " | 1 " |
| Harold S. Stuart, | "    " | 1 " |

Whole amount of stock paid in November 1st, 1899, 163 shares. Par value of shares, $100.

(Treasurer sign here)     " E. C. Ward,

Treasurer."

The defendant objected to the admission of the certificate, but the judge admitted it for the purpose of showing that the treasurer, Ward, made such a report, and for no other purpose. The defendant excepted to its admission.

The jury returned a verdict for the plaintiff in the sum of $1,107.15; and the defendant alleged exceptions, raising the single question as to the admission of the certificate in evidence.

The case was submitted on briefs.

*I. R. Clark & G. F. Ordway*, for the defendant.

*C. W. Clark*, for the plaintiff.

HAMMOND, J.    As bearing upon the probability of the defendant's story that before the delivery of the goods in question he had informed the plaintiff's president that he was about to sell out his interest as shareholder in the Grocers Specialty Company, and his further statement that in pursuance of that intention he did thereafter, in the latter part of 1898, sell his shares of stock to Ward, we think the plaintiff was entitled to show that as late as November 1, 1899, such a conveyance had not been made.

In view of the evidence of Ward, who was the treasurer of the Grocers Specialty Company, that many of the books of the corporation had been destroyed, that after search made by him he could not find the stockbook, did not know where it was or whether it had been destroyed, and his want of recollection as to who were the stockholders or whether the defendant had transferred his shares, the copy of the record purporting to be signed by a person bearing his name and occupying the office which it was shown he occupied was admissible as some evidence to show that the Ward who testified was the same Ward who filed the certificate. *Binney* v. *Russell*, 109 Mass. 55. Only for this limited purpose was it admitted. The proof that the certificate was made by the Ward who testified, when taken in connection with his evidence upon the stand that if he made it he thought it was correct, had a tendency to show the truthfulness of the statements therein contained. See *Atherton* v. *Emerson*, *ante*, 199.

It is argued by the defendant that the evidence was not admissible to contradict Ward, called by the plaintiff, but the answer is that it did not contradict him. He had not testified

to anything inconsistent with the return.   He had simply said that he did not remember.   Nor was the certificate inadmissible upon the ground that it tended to contradict the defendant upon an immaterial matter.   The truthfulness of the defendant's statements as to his ownership of stock had a material bearing upon the probability of the ground of defense set up by him.

*Exceptions overruled.*